[Cite as *SRS 2019, L.L.C. v. ARK Mgt., L.L.C.*, 2026-Ohio-463.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

SRS 2019, LLC,                              :

    Plaintiff-Appellant,              :

                               No. 115251

    v.                                         :

ARK MANAGEMENT, LLC, ET AL.,    :

    Defendants-Appellees.            :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 12, 2026

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-23-980483

---

### *Appearances:*

Shapero & Green, LLC, Brian Green, and Sean Burke, *for appellant*.

Kohrman Jackson & Krantz, LLP, Ari H. Jaffe, and Jeffrey R. Vaisa, *for appellees*.

---

SEAN C. GALLAGHER, P.J.:

{¶ 1} SRS 2019, LLC, appeals the judgment entered following a bench trial in favor of ARK Management, LLC, and Chaim Cohen on the breach-of-contract, unjust-enrichment, conversion, negligent-misrepresentation, and fraud claims

asserted in the amended complaint. The trial court also rendered a verdict in favor of SRS on the counterclaim for defamation. For the following reasons, we affirm.

{¶ 2} Cohen is the sole member of ARK Management, an Ohio corporation formed in 2014 with a principal place of business in Beachwood, Ohio. There are no allegations in the amended complaint or factual assertions at trial supporting a claim that Cohen acted in his individual capacity or exerted such control or dominance over ARK Management that it had no separate mind or will. *See Hayes v. Mingo Properties, LLP*, 2025-Ohio-378, ¶ 26 (8th Dist.). The undisputed evidence at trial demonstrated that ARK Management kept its finances and bank accounts separate from Cohen's personal ones, and at all times SRS's dealings were with Cohen as the sole member of ARK Management and as the manager of Amir Nahmais, LLC. ARK Management provided property-management services, collecting rents and remediating issues with tenancies. At one point, ARK Management serviced approximately 200 units. Cohen owned another entity, Harel, LLC, that provided renovation services. Harel was not a party in the underlying litigation.

{¶ 3} Sometime in 2020, Shalom Simon, who permanently resides in Israel and relies on local service providers, connected with ARK Management based on an interest in entering the real estate investment market. In May of that year, Simon formed SRS with the help of Cohen, who is not an attorney or licensed real estate agent, for the sole purpose of purchasing real estate. Simon is the sole member of SRS. SRS claims that R.C. 4735.02 was violated because that statute

requires any individual managing or facilitating the sale or management of properties to maintain a real estate license. SRS provided no testimony to establish the legality of ARK Management's structure, and instead, solely relied on testimony from Simon and Cohen in which they were asked about their knowledge of the statutory section.

{¶ 4} SRS first purchased a property located at 25100 Drakefield Avenue, South Euclid, Ohio, in mid 2020. SRS directly purchased that property for $77,253 from the previous owner. At that time, a $4,000 payment was made to Harel. The following September, SRS bought the 4495 Ammon Road property, also located in South Euclid, directly from Adam Collins, LLC, for $100,000. In addition to the purchase price, SRS paid $43,500 to Harel for renovations, including what was claimed to be a $5,000 fee.[1]

{¶ 5} When first entertaining the investment opportunity, Simon was provided a one-page document containing information regarding each of the two purchases. Both documents had "ROI" next to untranslated Hebrew text. On each respective document, "ROI 8.2%" and "ROI 8.0%" appeared at the bottom. Although SRS's counsel questioned Simon and Cohen about those numbers, there is no testimony explaining the significance of the term or the application to SRS's investment. The term "ROI" was not defined by SRS, but Simon "nodded" when

---

[1] At trial, Simon testified that the $5,000 represented a "commission" being paid to Cohen; however, that number was in part discussed with respect to untranslated Hebrew text in the document at issue. The parties ultimately agreed that the Hebrew wording related to the $5,000 translated to English as "fee."

questioned on cross-examination whether "ROI" means "return on investment." No direct answer was provided. Tr. 115:8-10.

{¶ 6} SRS and ARK Management never executed the management agreement that ARK Management presented detailing the services to be provided. Both parties nevertheless operated under the terms and conditions established by the unsigned agreement. By June 2021, SRS received a $13,000 distribution from the rental profits received on the two properties. A month later, SRS purchased another corporate entity, Amir Nahmais, which owned four other properties in South Euclid: 3814 Salisbury Road, 3898 Salisbury Road, 3803 Sherwood Road, and 1149 Dorsh Road. Cohen signed the purchase agreement as the manager of Amir Nahmais, LLC, which assigned all corporate interests and assets to SRS for $425,000. Cohen's role in Amir Nahmais is unclear. In January 2022, SRS formally transferred the properties from Amir Nahmais to SRS in documents executed by Simon on behalf of SRS.

{¶ 7} In March, April, and June of 2022, ARK Management distributed another $27,500 to SRS as profits earned from the rental properties, several of which experienced tenancy issues because of the market conditions at the time.

{¶ 8} In total, ARK Management was paid $23,700 between May 2020 and January 2023. According to the agreement, if no rent was received by ARK Management from a tenant, it would not receive any payment for its services that month. If rent was received, ARK Management was paid 10 percent of the rent or $100, whichever was greater.

{¶ 9} By 2024, the value of the six properties had increased by approximately 60 percent, representing an unrealized gain on SRS's initial investment.

{¶ 10} It appears the relationship between ARK Management and SRS soured by mid to late 2022. Simon accused Cohen of not performing some of the repair work invoiced and also of failing to obtain written or oral permission for any expense greater than $500. According to Simon, the agreement between SRS and ARK Management was terminated in October 2022, although it appears that ARK Management wound down its involvement through January 2023. Cohen testified that the work was not only performed, but that all expenses over $500 were verbally approved by Simon.

{¶ 11} At trial, SRS sought to declare the terminated contract between SRS and ARK Management void based on R.C. 4735.02. That provision provides that "[n]o person, partnership, association, limited liability company, limited liability partnership, or corporation shall act as a real estate broker or real estate salesperson, or advertise or assume to act as such, without first being licensed." R.C. 4735.02(A). According to SRS, voiding the already terminated contract required ARK Management to return the $23,700 in fees SRS paid out of the rents received.

{¶ 12} In addition, SRS sought the following: return of the $47,500 paid to Harel with respect to the Drakefield and Ammon Road properties, despite the fact that Harel was not a party to the underlying litigation; $6,125 damages for uncollected rents or utility billings from tenants in the Drakefield property; $775

for an unapproved expense and $2,900 for unpaid rent for the Ammon Road property; $11,741.63 for unapproved renovations and $1,347 for unpaid water and sewer bills by the tenant at the Dorsh property; $825 for a charge related to the Sherwood property; $2,115 for unapproved expenses at the 3814 Salisbury property; $4,200 for unapproved expenses for the 3898 Salisbury property; and $2,295.16 for unpaid or late property tax payments. Thus, the damages sought, excluding those pertaining to the nonparty Harel, totaled $28,123.79 in damages and a return of the $23,700 paid to ARK Management for services rendered.

{¶ 13} After trial, the trial court concluded: (1) that SRS failed to prove its breach-of-contract claim because of the uncertainty of Simon's testimony regarding the unapproved expenses or whether the work was performed; (2) that because SRS asserted and demonstrated the enforceability of the contract between SRS and ARK Management, the unjust-enrichment claim could not be sustained; (3) that the conversion claim based on the alleged unperformed work was not demonstrated with sufficient evidence; and (4) that because Cohen never held himself out as being a licensed real estate broker, SRS's fraud and misrepresentation claims were without merit and in addition, R.C. 4735.02 did not provide for a private cause of action to support those claims. The trial court also found no relevant evidence to support the defamation counterclaim. A verdict was entered in ARK Management and Cohen's favor on all claims in the amended complaint, and in SRS's favor on the counterclaim. This appeal timely followed.

{¶ 14} In the first assignment of error, SRS claims the trial court erred by ruling that a valid, enforceable contract existed between it and ARK Management because the contract was illegal under R.C. 4735.02. According to SRS, because the agreement was void ab initio, ARK Management received monies that it was not entitled to receive, and solely by virtue of entering a void contract, Cohen is personally liable. Those claims lack merit.

{¶ 15} SRS advanced the breach-of-contract claim alleging that ARK Management breached the agreement by expending money for projects exceeding $500 in value without SRS's written or verbal approval. The verbal or written approval stemmed only from the unsigned agreement. Thus, in order to prove entitlement to relief, SRS necessarily presumed the existence of a binding contract between it and ARK Management. At trial, ARK Management agreed that the management agreement was binding, and both it and SRS agreed to operate under the terms of that agreement until SRS terminated the agreement in October 2022. Because SRS advanced the claim for breach of contract, it cannot be said that the trial court erred by in part agreeing with it that a valid, enforceable contract existed. The doctrine of invited error provides that a litigant may not "take advantage of an error which he himself invited or induced." *State v. Garrett*, 2022-Ohio-4218, ¶ 203, quoting *Hal Artz Lincoln-Mercury Inc. v. Ford Motor Co. Lincoln-Mercury Div.*, 28 Ohio St.3d 20 (1986), paragraph one of the syllabus. Any error in agreeing with SRS that an enforceable contract existed was, at best, invited when SRS's claims

at trial in part relied on the enforceability of the $500-limitation clause in the unsigned agreement.

{¶ 16} Further, inasmuch as R.C. 4735.02 is implicated by the services ARK Management provided, which we solely presume for the sake of discussion, SRS has not addressed R.C. 4735.21, which in general only precludes ARK Management from seeking to enforce an agreement if it was required to employ a licensed real estate broker to handle any given transaction. That statutory section does not provide any remedies to a party in SRS's position beyond a defense to claims brought by a party in ARK Management's position. There is no private right to a cause of action in this statutory structure entitling SRS to any further relief beyond invalidating the agreement and precluding ARK Management from enforcing the agreement. *See R.P. Davis Constr. Co. v. Noll,* 1993 Ohio App. LEXIS 3126, *6 (12th Dist. June 21, 1993).

{¶ 17} The first assignment of error is overruled.

{¶ 18} In the second and third assignments of error, SRS claims the defense verdict on the claims advanced in the amended complaint was against the weight of the evidence because ARK Management was unable to present text messages to demonstrate that it obtained SRS's approval for expenditures greater than $500 as it pertains to the breach-of-contract claim and, in addition, the trial court erred by failing to find that Cohen was personally liable for fraud because he admitted to making false representations regarding his licensure and qualifications or the return on SRS's investment.

{¶ 19} When reviewing under the manifest-weight standard, this court "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983); *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 17. A manifest-weight challenge should be sustained "'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at 387, quoting *Martin* at 175.

{¶ 20} SRS claims that Cohen was required to produce text messages to support his testimony. That claim is misplaced. As the parties conceded, SRS and ARK Management operated under the unsigned agreement that permitted verbal approval of expenditures exceeding $500. The trial court expressly concluded that Simon's testimony was insufficient to support his burden to prove by a preponderance of the evidence that no approval was given in light of Cohen's conflicting testimony. The trial court, as the trier of fact, was free to consider the weight of the evidence presented, and SRS has not demonstrated that Cohen's trial testimony was inherently incredible.

{¶ 21} Further, SRS failed to provide any citation to the record demonstrating that Cohen acknowledged making any false representations. Instead, the evidence unequivocally established that Cohen never held himself out as holding any real estate license or certifications.

{¶ 22} And finally, as to the weight-of-the-evidence arguments, SRS failed to demonstrate that the indicated "ROI" for the Ammon and Drakefield Road properties was fraudulent. Even if we presumed ROI means return on investment for the purposes of this appeal, no testimony was presented to discuss the actual return on investment or an annualized return as it pertained to those two properties separate and apart from the remaining four investment properties. But regardless, the documents at issue merely provided a percentage next to the acronym "ROI" and untranslated Hebrew text. "ROI" appears to be a term of art in the financial industry. That term was neither explained nor defined at trial. Instead, it was merely presumed, based on the questions being asked of both parties, that the annualized return calculated as being less than 3 percent was relevant to the "ROI." Because there is no testimony establishing the connection between "ROI" for the Drakefield and Ammon Road properties and the 3 percent total return on all six properties discussed at trial, the verdict on the fraud or misrepresentation claims is not against the weight of the evidence.

{¶ 23} Because it cannot be concluded that the trial court lost its way and created a manifest miscarriage of justice, the second and third assignments of error are overruled.

{¶ 24} In the fourth and final assignment of error, SRS claims the trial court erred by not awarding it its reasonable attorney fees on the defamation counterclaim under R.C. 2323.51.

{¶ 25} Upon reviewing the docket, it does not appear that SRS filed a motion as required under R.C. 2323.51(B)(1) within 30 days of the judgment. The trial court's final judgment entry does not contain any decision pertaining to frivolous conduct or attorney fees. The only mention of R.C. 2323.51 and a request for attorney fees as to the defamation claim appears to be in SRS's written closing argument. In the proposed conclusions of law that SRS asked the trial court to adopt, SRS included a paragraph stating: "Cohen and ARK asserted counterclaims for which they had no evidence, presented no evidence, and admitted that they had no basis. These claims were frivolous pursuant to R.C. 2323.51 for which SRS is entitled to recover its reasonable attorney fees for defending" with damages to be proven at a later hearing. Presenting the trial court with a proposed conclusion of law seeking damages for frivolous conduct is not sufficient to preserve the claim. Proposed findings of facts and conclusions of law for bench trials are not the proper mechanism to assert claims under R.C. 2323.51. *See, e.g., Bloom v. Bloom*, 2020-Ohio-4107, ¶ 87 (11th Dist.) (request for attorney fees under R.C. 2323.51 made in closing brief is not sufficient to preserve the claim). Under R.C. 2323.51(B)(1), a motion must be filed within 30 days of the final judgment. Because there was no motion filed under R.C. 2323.51, any claims for attorney fees have been waived. The fourth assignment of error is overruled.

{¶ 26} The final judgment is affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
SEAN C. GALLAGHER, PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
WILLIAM A. KLATT, J.,* CONCUR

(*Sitting by assignment:  William A. Klatt, J., retired, of the Tenth District Court of Appeals.)